IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHARON LEONARD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action<br>No. 07-0757-CV-W-JCE-SSA |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for supplemental security income ["SSI"] under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

1

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff, who was 50 years old at the hearing before the ALJ, has thirteen years of education. Her past relevant work includes home health aide, file clerk, customer service representative, and data entry clerk. She alleges disability because of severe pain in the back, legs, feet and toes; weakness in the back, arms, hands, legs, and feet; and depression.

It was plaintiff's testimony at the hearing that she stopped working as a home health aide in August of 2002 because her back pain had gotten bad and she was too weak to lift her patient. She had already cut back to part-time work about six months previously because of pain in her lower back and weakness in her arms and back. She testified that she could not do clerical work because she could not sit without being allowed to put her legs up when she needed to because of the neuropathy. In addition to back pain, she has increased weakness in her arms, shoulders, and hands. She stated that her legs cramp and become numb; they also burn all the way up to her hips. She has trouble standing, even at the stove, because of this. Her condition has gotten a lot worse since she quit work, and is continuing to worsen. She also has pain in her hands and arms, similar to her legs; she is bothered more on her right side, and is right-handed. She has stabbing pain in her fingers or palms, which occurs three or four times a week. Plaintiff cannot do any type of heavy lifting, over just a few pounds, and it takes longer for her to move something because of the weakness in her back. Her hands also get stiff and tingling when she tries to do things in the kitchen. She stated that the pain in her back is constant, and any type of activity makes it worse. She takes medication for her pain, including pain relievers and muscle relaxers, and the doctors have suggested massage and a heating pad for the pain. She also has hot burning pain in her legs and feet about two or three hours every day. When she stands for more than 10

minutes, she gets very week and has fallen down many times. She sees Dr. Williams, her treating physician, about every two months, and has been treated by him for about a year and a half. Plaintiff testified that she is on her feet about one or two hours a day, and sits with her legs elevated or is lying down five or six hours a day. It was also her testimony that she has mental health problems that would interfere with her ability to work. She cannot concentrate and she wants to be left alone. These problems started in the last five or six years. Regarding a suicide attempt in 2003, plaintiff testified that this was brought on by the stress of her health, her husband's health, and her feelings of uselessness. After that, she started seeing a psychiatrist and sees a therapist. When she was 16, she tried to commit suicide, and saw a psychiatrist for a year after that. She did not continue with mental health treatment until 2003. Her medication has been increased in the last few months because she still has suicidal thoughts and thoughts of wanting to harm her husband. The increased medication has helped a little bit. She lacks concentration, wants everything to go away, her mind wanders, and she has sleeping difficulties. She is sometimes sleepy during the day as a result of having to take extra pain medication. Plaintiff testified that even if her husband did not have all of his health problems, she did not think she could work because she cannot lift, stand for very long, write for very long, and could not maintain the high ratings that she used to get when she worked. Plaintiff does not take medication for diabetes, but tries to control the disease with diet. Her husband's health requires that she feed him because of Parkinson-like syndrome.

     The ALJ found that plaintiff has not engaged in substantial work activity since the alleged onset date, August 2, 2002. He further found that the medical evidence established that plaintiff suffers from adult onset (insulin resistant) diabetes with peripheral neuropathy, obesity,

4

and mild degenerative disc disease. It was the ALJ's finding that plaintiff was not fully credible. It was his opinion that plaintiff was unable to perform her past relevant work, but that she could perform work at the light exertional level.

Plaintiff contends that the ALJ's decision should be reversed because he erred in his credibility analysis; that he failed to assign proper weight to the medical opinion of the treating physician and the consultative examiner; and that the vocational expert's testimony is not supported by substantial evidence in the record as a whole.

In terms of the weight giving to the medical opinions in the record, it is plaintiff's position that the ALJ should have given greater weight to the opinion of Dr. Williams, her treating physician, and Dr. Brothers, the state agency consultative physician. Dr. Williams restricted plaintiff to sedentary work, which was further reduced by what he found to be severe mental functional limitations. Dr. Brothers found that she could perform less than the full range of light work. Plaintiff contends that rather than given considerable weight to these opinions, the ALJ resolved the issue by giving undue weight to the opinions of Dr. Majure-Lees, who evaluated plaintiff's physical complaints for the state agency, and Dr. Horner, who conducted a consultative psychological examination, as well as the medical expert who testified at the hearing telephonically.

Regarding the ALJ's reliance on the opinions of treating physicians, a treating physician's opinions are ordinarily to be given substantial weight. They must be supported, however, by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

After careful review, the Court finds that it was error to not have given controlling weight to the treating physician and the consultative examiner, and there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's physical and mental impairments were not disabling. The record supports the conclusion that the limitations suggested by the treating physician and consultative examining physician are consistent with the record as a whole.

Medical records from Dr. Williams, from October of 2003 until February of 2005, indicate that he treated plaintiff for major depression and back problems. He completed a Medical Source Statement in which he indicated that plaintiff suffered from neuropathy and neuropathic pain that limited her to lifting 10 pounds occasionally; sitting two hours in an eight hour day, one hour without interruption; no standing or walking for extended periods; and only occasional use of her hands for grasping. He also opined that she could not perform eight hours a day of work in a competitive environment with absences of no more than one day per month. Further, it was the treating physician's opinion that plaintiff had limitations in mental functioning, including poor ability to deal with the public, deal with work stress, and maintain attention/concentration.

The Medical records from Dr. Brothers, the consultative examiner, indicate that plaintiff suffers from adult onset non-insulin dependent diabetes, under fair control, although she is reported to be insulin resistant; diabetic peripheral neuropathy, which affects all her extremities, particularly her feet; probable osteoarthritis and/or degenerative disc disease of the neck; scoliosis and possible right sciatica; obesity; reasonably controlled hypertension with medication; and a history of depression. The consultative physician conducted a comprehensive

6

examination of plaintiff, and relied on her medical history, as well as the doctor's own examination, in reaching the conclusion that plaintiff suffers from multiple physical impairments and from life-long depression and anxiety. She noted that plaintiff experienced sexual abuse as a child and attempted suicide at age 16 and again in 2003; and that she has a complex medical situation, "due to physical and mental factors." [Tr. 406]. It was the doctor's opinion that she is limited in walking to 30-60 minutes at a time, due to her feet, which are so tender that she cannot tolerate socks; that she can probably stand ½ hour at a time, but not more than three to four hours in an 8-hour day, with frequent postural changes; that she could probably sit three to four to six hours a day, with frequent changes of position, at least hourly, and that she should rotate sitting with walking and standing; that she should use a cane for assistance, especially with any prolonged walking; she should avoid uneven terrain, limit stair climbing, repetitive squatting, or kneeling; avoid repetitive use of her right hand; should not push, pull or shove heavy objects above shoulder level; and avoid sustained flexion/extension of the head and neck. Dr. Brothers also opined that plaintiff suffers from serious burnout due to the care giving that is required of her, mainly by her husband's multiple chronic health problems, and that she is "quite likely to have continued suicide ideation or even further attempts." [Tr. 406].

     Other medical records indicate that plaintiff pursued mental health treatment, in addition to medication, after her suicide attempt, and that she was diagnosed with Post Traumatic Stress Disorder, adjustment disorder, and major depression, for which she was treated with Zoloft and Restoril in varying dosages. The medical records indicate that the medications she has taken include Neurontin, Ultram, Premarin, Amitriptyline, Zoloft, Restoril, Baclofen, and HCTZ.

In rejecting the opinion of Dr. Williams and Dr. Brothers, the ALJ stated that the treating physician had limited contact with plaintiff, and that in rendering his opinion, the doctor appeared to rely a great deal on plaintiff's subjective complaints. He stated that both Drs. Williams and Brothers made findings more restrictive than other doctors of record, and that "many of their limitations appear based on the claimant's subjective complaints, not objective findings." [Tr. 35].

The fact that Dr. Williams and Dr. Brothers relied on plaintiff's subjective complaints, as a treating physician, and, in this case, a consultative examining physician, would ordinarily be expected to do, is not a proper basis to completely discredit that physician's diagnostic process. Flannery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997). It is clear, moreover, that these physicians did not rely solely on plaintiff's subjective complaints. They also fully examined plaintiff and were able to document her pain and tenderness, lack of range of motion, and other signs of physical limitations with their own observations, objectivity, and diagnostic tools. They were also able to observe and draw conclusions about her mental health status, given her history and treatment. The ALJ, rather than relying on these opinions, gave more weight to the opinion of Dr. Majure-Lees, Dr. Horner, and the medical expert who testified by telephone during the hearing, and who never saw plaintiff, finding their opinions to be consistent and supported by the totality of the evidence.

After a full review of the record, however, the Court finds that the ALJ erred in not giving greater weight to the treating physician's opinion, as well as the opinion of the consultative examiner, whose opinion was clearly consistent with Dr. Williams. In fact, the Court finds it worthy of note that the evaluator found plaintiff to be even more restricted than the

treating physician did.  Because their opinions regarding her limitations were mutually consistent and otherwise supported by the record, the Court finds that it was error to afford more weight to other examining physicians and a medical expert who never saw plaintiff and only reviewed her records.  Additionally, even according to Dr. Horner, who provided a mental assessment in 2003, plaintiff suffers from an adjustment disorder with depressed mood, which caused her mild to moderate limitations in concentration and persistence, and a Global Assessment of Functioning ["GAF"] of 50-55, which indicates moderate symptomatology.  Although the ALJ stated that Dr. Horner concluded that plaintiff's symptoms were improving with medication, it is worth noting that he evaluated her in June of 2003, and in September of that year, she attempted suicide with a drug overdose.  Additionally, regarding the ALJ's reliance on Dr. Majure-Lee, this physical assessment was conducted in July of 2003, and found plaintiff to be less limited physically than Dr. Williams and the consultative examiner concluded that she was in 2004 and 2005.  The Court finds that, based on the record as a whole, there is not substantial evidence to support the ALJ's reliance on non-treating physicians and the medical expert.

Regarding her mental problems, the ALJ dismissed these as revolving around taking care of her seriously ill husband, finding that they were situational, that she has improved with medication, and that she has only some mild mental limitations.  It was his opinion that the "stress and anxiety [plaintiff] has experienced appears consistent with the stress and anxiety anyone would naturally feel in the claimant's situation." [Tr. 37].

In this regard, the record supports a finding that plaintiff has a long history of psychiatric problems, from the time she was abused as a child, attempted suicide at sixteen, has been diagnosed with major depression and other adjustment disorders, has been treated with both

9

medication and counseling, and had another suicide attempt a few years ago. The fact that she is also overwhelmed by the situation presented by her husband cannot be said to negate her history of mental health problems.

Accordingly, the Court finds that, based on the record as a whole, the ALJ's decision to find that plaintiff is not disabled is not supported by substantial evidence.

Accordingly, the decision of the Secretary should be reversed.

Based on the foregoing, the Court finds that there is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: February 4, 2009